v. United States of America. I'll just give you a second to get settled. So, Mr. Murphy, you have reserved two minutes for rebuttal. Thank you, Your Honor. Eight minutes out of the gate. You may proceed. Good morning, Your Honor. As you may have pleased the court, Tim Murphy, I'm representing Mr. Brown this morning, the appellant. California's homicide law is not a crime of violence under the 924C elements clause. And we say that because the law encompasses reckless conduct, which is prohibited under Borden. In Borden, the court ruled that a state statute which criminalizes reckless assault was not a violent felony under the Armed Career Criminal Act elements clause. Well, the California statute requires malice before a body, right? That's correct, Your Honor. Yeah. Isn't malice before a thought something different from recklessness? It's considered to be a higher level of recklessness, Your Honor. But I'd ask the court to focus in. And one of the citations I provided in my brief is the Vizcarra decision, which does a full workup of California's homicide law now. They've had some changes in the law. And Vizcarra recognizes that under both of the implied malice homicide doctrines in California, they both task the court with the ultimate determination of the probability issue. What is the probability that harm would occur? And we say this is a determination that's unnecessary if the mens rea was purposeful or knowingly, as Borden said the elements clause is supposed to be. It's a determination only made necessary because it hinges on indifference. And I'd like to focus the court on that in the Borden decision. I recognize that Borden went out of its way to say it was not going to decide the issue about enhanced recklessness. I recognize that. But there are some principles that Borden set out that I'd like to focus in on that I think helps answer Judge Chin's line of questioning. Number one, recklessness does not aim at a target. Two, the word against in the elements clause means in opposition to and with conscious objective to act purposely and excludes recklessness. And just two more points here. Force from the clause is directed at and it doesn't just happen to an object. And then the most important point from 1830 of Borden is that the elements clause focuses on deliberative choices, not mere indifference. So California's interpretation of 187 recognizes that the task is a determination. You know, is it mere indifference? I mean, my understanding is that the California cases require knowledge and degree with conscious disregard for human life. It's not just recklessness. So Judge, two points on that. There are two doctrines in California. One is the standard that was kind of mirrored in the other circuit case law that has this wanton disregard for human life. Then there's the natural and probable consequences, which is just the callous disregard for human life. What we are saying is that Borden addresses indifference. And whether they said mere indifference or just the word indifference, it's a lie in the sand that protects defendants as we approach the situation under the categorical approach. I would ask the court to consider Judge Thomas' concurrence, who was the fifth vote in Borden. He criticizes the prosecution for using the elements clause as kind of a workaround. And that Davis and Johnson took care of the residual clause. You don't have that. So now we're going to expand, if you will, the elements clause. And what we say is that what's being done by the government here is analogous. The categorical approach is not supposed to include an estimation of risk of harm based on the nature of the crime. And that seems to be what we're trying to do with extreme recklessness. The categorical approach would just supposed to be to determine what the lowest level of conduct will satisfy the elements. It is under-inclusive by design. But what we get back in exchange for that is more predictability for defendants. I'd like to contrast, if I may, or at least make some sort of contrast with some of the circuit case law that my friend, the government, made in their brief. The first circuit, of course, was the Baez decision. That was pre-Borden. And we say that shouldn't be given as much weight because it doesn't address the targeting requirements that Borden does. I will acknowledge that the Eleventh Circuit in the Alvarado decision does address our concern in Borden at 1830, the indifference comment that I mentioned. However, the Georgia statute that was interpreted by the Eleventh Circuit was interpreted to not just be unknowingly, but almost an implied intent. That's not what the California cases have interpreted their statute as. The other two circuits, the Fourth Circuit in Manly dealing with the Virginia statute, the Ninth Circuit dealing with the federal statute, they both did cite to Borden. Neither one addressed the mere indifference comment that I just made before at 1830 of the Borden decision. So I'd ask that the court contrast in that way. Is it correct that all those cases concluded that the crime in question was a crime of violence? Could you say it again, Judge? I apologize. Yeah, no, I thought that all those cases concluded that the crime in question was a crime of violence because it involved extreme recklessness. That is correct, Your Honor. I am asking this court to go in a different direction than the other circuits. You are correct. I guess let me ask what might be an obvious question, but is this the right case for us to go down this road when your client is serving multiple life sentences? The concurrent sentences doctrine does allow courts to sidestep issues like this that are frankly kind of academic. This will have no impact on what sentence he actually serves, right? That's true, Judge. He has, I think it's a total of nine life sentences. No question about that. It's such an important issue for the defense at Barlow. We ask that you do reach it. I recognize that his sentence isn't going to change because of it. I do recognize that. I would ask, Your Honors, in sum, the homicide statute in question not being a crime of violence, that you find that counts 14 and 18, my client's convictions, for 924C be invalidated. And I thank you. Thank you. You've got two minutes for rebuttal. We'll now hear from Mr. Harris. Good morning. May it please the court. Mr. Harris, before you sort of jump in, maybe I'll just ask you to pick up where we left off with Mr. Murphy. Concurrent sentences doctrine, the government hasn't made that argument. I'm not sure that we're bound by the government making it, but is there a reason why the government didn't make it? Your Honor, the court certainly retains the discretion to sidestep this issue on that basis. We didn't engage in that particular issue. Is it correct that the Supreme Court dealt with pretty much that issue about 20 years ago, 30 years ago, in a case in which the Supreme Court ruled that the presence of the $200 special assessment account obviated, made it impossible to disregard an additional account that had no effect on the defendant's service of his sentence? It used to be, back in the days when I was an assistant and a law clerk, courts of appeals routinely tossed out counts that wouldn't affect the sentence. I mean, tossed out objections to counts that wouldn't affect the sentence. And the Supreme Court then said, because of the $200 special assessment, you can't do that. I'm not familiar with that case, Your Honor, quite candidly. There's a difference between a direct appeal and a habeas, right? That's correct, Your Honor. That's correct. And we are on a habeas review here. Well, would the habeas review require giving back the $200 if they've been paid? I think that if the conviction was vacated, it would.  It would, Your Honor. Well, the $200 is not, as I understand it, this was a la Wally case that was decided in 2022. That habeas doesn't extend to fines or special assessments. Again, Your Honor, not an issue in brief, so I apologize, not being familiar with the cases that you cited. All right, well, let's get to the main event. Yes, Your Honor. So there are three points I want to emphasize for the Court today. The first point, which I believe was conceded by the appellant, is that the kind of extreme recklessness contemplated in Section 187 of the California Penal Code is different in a heightened standard than the ordinary recklessness that concerned the Supreme Court in Borden. The second is that that kind of extreme recklessness is analogous to a knowing standard, which the Court in Borden held was sufficient to satisfy that targeting concern. And the third, of course, is that concluding that murder is not a crime of violence would be a result incongruent with the common sense understanding of that term, an understanding that the Supreme Court in Borden explicitly emphasized should inform application of that term. So first, in Borden, the Supreme Court's concern with recklessness appeared to be that a person could take a reckless action unaware that it endangered persons and that the risk of harm could be actually quite low. It said that a person acting recklessly has insufficient concern with the risk of injury, even if that risk is nowhere close to likely, so somewhat of a remote possibility. That is not the issue with the California Penal Statute. In Vizcarra, the California Court of Appeals articulated what this implied malice standard means. And there's two different kinds of lines of case law on this, but both of them, which are set forth in Vizcarra, say that a defendant must take a willful act knowing that the natural and probable consequences are likely to result in someone's death or, in the other line of cases, a high probability that it would result in death, and nonetheless, the person takes the action anyway, knowing that more likely than not, someone is going to die as a result of their conduct. That's far different than the Supreme Court's concern in Borden where it said, for example, in Vizcarra, quote, speeding through a crowded area may count as reckless, even though the motorist's chances of hitting anyone are far less than 50%. So here, a person must know that what they're doing is probably going to kill someone and then nonetheless take that action. That's a much higher standard than the kind of ordinary recklessness that concerns the Supreme Court in Borden. Well, it's a little tricky. I mean, it seems to me it's hard to define the differences between ordinary recklessness and extreme recklessness, but California does have these vehicular homicide cases that turn on people with multiple prior DWIs and get them loaded driving the wrong way down a highway, and that has been deemed to be covered by this statute, right? I think that's right, Your Honor. I think that when a person takes an action like that, if the circumstances prove that they are aware that more likely than not, by driving down at a very high rate of speed into oncoming traffic, someone is going to die as a result, they have acted with implied malice. In the same way that a person knowing a room is crowded with people puts on a blindfold and starts shooting wildly into the room, he does not specifically know he's pointing at any particular person, but he knows that his actions are likely to result in death. And I note, again, there's a California case, People v. Malfovan, in which the court specifically made the point that this malice of forethought is greater than recklessness. And it said it was distinguishing in a child abuse homicide statute from the statute at issue here, and it said the child abuse homicide statute speaks to reckless conduct. However, murder targets either a deliberate intention, unlawfully to kill, or an abandoned and malignant heart. These are not mere distinctions without a difference. And the difference here is the quantum of awareness of risk. And that's really what concerned the Supreme Court in Borden. We've got Justice Thomas' concurrence. I mean, what you just said wouldn't satisfy the reasoning of that concurrence. Would you agree? Well, Your Honor, I would say that when a person acts knowingly, which is what the plurality held in Borden, and that satisfied the standard in which Judge Thomas joined, this standard is analogous. A person who acts knowing that their conduct is likely to result in harm is acting in an analogous way to a person who knows that their conduct is going to result in harm. And by that standard, a person is making the decision to use force against another person. Well, I mean, it seems that the concurrence talks about sort of anything less than intent is not going to be sufficient for purposes of the elements clause. You seem to be suggesting that what's taking place here is extreme recklessness, and somebody should have known. But you're saying that, according to the concurrence of Justice Thomas, that would be akin to intent? A person does not should have known here, Your Honor. A person does know, and they make, nonetheless, the choice to take that action. In the same way, when a person knows the consequences of their actions are virtually certain, that's the knowing standard. When a person takes their actions believing the probable consequences are going to be a person's death, that's the extreme recklessness standard. And both of those, in the government's view, equate to a person intending the results of the natural and probable consequences of their actions. But a drunk driver? I mean, so that's I think where I seem to have problems here is that California has a number of cases involving drunk drivers. And you're saying that what they did is akin to just having the intent. They know that it must happen when they get into that car and turn the ignition. Well, I think it really turns on the specific facts of each case. California, for example, has a manslaughter statute. And the manslaughter statute takes into account a lower awareness of risk. It talks about taking an unlawful act that might produce death without due caution and circumspection. That's much more analogous to the ordinary recklessness standard that concerned the court in Borden. However, when a person goes beyond that and takes actions that they believe are going to likely cause a person's death, that's a greater awareness of risk and a choice, a knowing choice, to disregard that likelihood. Well, I'm looking at California appeals cases, so it's not the highest court in California. But a drunk driver who goes the wrong way down a highway, this is People v. Murray, ends up killing four people. It's not clear that he intended to drive the wrong way down the highway. He was impaired. He got into a car, turned the ignition, and drove. I'm sorry, which case was that, Your Honor? Murray. People v. Murray. I don't have that case in front of me, Your Honor. And, again, I don't know whether it turned on the application of the felony murder rule or not. But what I would say is, again, when a person is, based on the circumstances, whether it's the speed with which they are driving, how many cars are on the road, if they are driving into oncoming traffic at 100 miles an hour, the chances are quite high that someone is going to die, and they are nonetheless taking that action knowing that. And that's what the standard would have to satisfy. The last point, and I see my time is up, but I just want to emphasize, the Supreme Court in Borden said a few things that I think bear emphasis. One is it described murder as a quintessentially violent crime that was in the heartland of what this phrase, violent felony or crime of violence, was intended to cover, as opposed to the kind of DUI offenses that concerned the court in Borden. And it emphasized that we must not lose sight of the fact that we are defining a term violent felony or crime of violence, and we must not lose sight of the common sense that likely informed Congress's understanding in setting forth that term. So if murder is not a crime of violence, it's hard to see how that term is not going to go anywhere. I don't think anybody here would disagree with you. I mean, this entire categorical approach has sort of become almost farcical. But the point is, as Judge Chin pointed out, malice of forethought usually is enough to show that this is something different. But California courts have interpreted a statute that includes the words malice of forethought and applied it to drunk driving cases. Well, I would not—I don't know if I would call them drunk driving cases, Your Honor, such as cases where persons have driven at high rates of speed into oncoming traffic. I think it's not simply enough for a person— But they didn't—I mean, there's nothing in those cases that suggests that they knew they were driving into oncoming traffic. They were impaired. Well, again, Your Honor, it depends on the specifics of each case. When a person is driving— Okay, but that's malice of forethought in your— Yes, and again, Ford and Reserve decision carved out this kind of heightened recklessness as something it was not reaching. Well, that's right. That's why we're here is we're trying to figure out whether the question they didn't reach is covered. And then I guess if we reach it, then they'll have occasion to reach it again, too. I think that's right. But I would just encourage the court to look to its sister circuits, all who have applied the same standard and all who have come to the conclusion that is analogous to the knowing standard set forth in Borden and sufficient to constitute a use of force against the person of another. Thank you, Mr. Harris. Thank you, Mr. Murphy. You have two minutes for a vote. Thank you, Your Honor. Just three points.  This is, of course, a term of art. And what Congress intended was to apply mandatory minimums for a very specific, rare, violent offender. So it's supposed to be difficult. The categorical approach is under-inclusive by design. In your view, is Congress intended the categorical approach? The court's made it up. Well, I guess my point is that the mandatory minimums are supposed to be in the most rarest of circumstances. The categorical approach, I think, is consistent with making sure of that, making sure that, and I guess it's to jump on my friend's comment a minute ago that it depends on the facts of the case. The defendant should not be in a position to have to defend against facts that weren't used as elements to lead to his conviction in the first place. So in that regard, the categorical approach, I think, addresses this properly. That second line of cases that the government just mentioned, the natural and probable consequences doctrine, I would ask the court to take a look at Borden again. Borden accepted the model penal code definition of recklessness under 2.02 of the model penal code, and it's very close to the standard for the natural and probable consequences doctrine in California. We mentioned before, I think, the wanton disregard for human life. California, under the natural and probable consequences doctrine, uses the conscious disregard for human life. It's very similar to the model penal code, and I'd ask you to consider that from Borden. Beyond that, I'll rest in my brief, and I thank you. Thank you both. We will reserve decision.